# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

## Appeal No. 23-40032

### BRIAN CHANCEY,
*Plaintiff-Appellant,*

v.

### BASF CORPORATION
*Defendant-Appellee.*

On Appeal from the United States District Court

For the Southern District of Texas, Galveston

Civil Action File: 3:22-cv-34

### APPELLANT'S OPENING BRIEF

Brian Chancey, in *Propria Persona*
3117 Encino Avenue
Bay City, Texas 77414

U. S. COURT OF APPEALS
RECEIVED
FEB 22 2023
FIFTH CIRCUIT

- 1 -

# PLAINTIFF-APPELLANT'S CERTIFICATE OF INTERESTED PERSONS

# AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 16.1 and 5th Cir. R. 28.2.1, Appellant Brian Chancey certifies that the following persons and entities are known to Appellant to have an interest in the outcome of this case or appeal:

1. BASF Corporation (Appellee)
2. Jeffrey Vincent Brown  (U.S. District Judge)
3. Brian Chancey, (*pro se* Appellant)
4. Carolyn Russell (Appellee's counsel)
5. Ryan Swink (Appellee's counsel)

# STATEMENT REGARDING ORAL ARGUMENT

Appellant Brian Chancey, pursuant to Federal Rule of Appellate Procedure 34(a) and the Fifth Circuit Rule 28.2.4, does not request oral argument. The facts and legal arguments are adequately presented in the briefs, and record, and the decisional process would not be significantly aided by oral argument.

**Table Of Contents** Page

Table of Authorities ....................................................…............................. 5

Statement of Subject Matter and Appellate Jurisdiction..............................……......7

Statement of the Issues ................................................................ 8

    I. Whether the District Court erred by dismissing the complaint for failure to state a plausible claim of discrimination based upon disability.

    II. Whether the District Court erred in dismissing the complaint by concluding that that the complaint failed to identify disability-related inquiries and medical examinations on the part of the defendant.

    III. Whether the District Court erred in dismissing the complaint by concluding that Plaintiff's alleged adverse employment actions amounted to "nothing more than trivial slights" which could not support a retaliation claim under the ADA.

    IV. Whether the District Court erred by determining that Plaintiff was not entitled to a further opportunity to amend his pleadings.

Standard of Review................................................................ 9

Statement of the Case..............................................................12

Statements of Fact...............................................................  14

Argument and Authorities..........................................................15

Conclusion.......................................................................33

Certificates of Compliance and Service ...........................................34

Appendix.........................................................................35

# TABLE OF AUTHORITIES

## Cases

1) *Burlington Northern & Santa Fe Railway Co. v. White*
  548 U.S. 53 (2006) ………………………………………………….. 31

2) *Burton v. Freescale Semiconductor, Inc.*
  798 F.3d 222, 230 (5th Cir. 2015)   ……………………...…………….… 17

3) *Champion v. Mannington Mills, Inc.*
  538 F. Supp. 3d 1344, 2021 (M.D. Ga. 2021) ………….....…………….… 17

4) *Conroy v. N.Y. State Dep't of Corr. Servs.*
  333 F.3d 88, 94 (2d Cir. 2003) ………………………………………….. 23

5) *Dehart v. Baker Hughes Oilfield Operations, Inc.*
  214 F. App'x 437, 442 (5th Cir. 2007) ……………………………….… 29

6) *Eshleman v. Patrick Industries Inc.*
  No. 19-1403 (3d Cir. 2020) …………………………………………….. 20

7) *Flower World, Inc. v. Sacks*
  No,21-35641, Lexis22254,*14 (9th Cir. June 10, 2022) ………………….. 26

8) *Fraternal Order of Police v District of Columbia,*
  CA No. 000584 B, (D.C. Sup. Ct. 2022)   ……………………….….… 27

9) *Garvey v. The City of New York*
  2022 N.Y. Slip Op. 22335 (N.Y. Sup. Ct. 2022)   ………………….….. 26

10) *Georgia v. Biden*
  No. 1:21-CV-163, F.Supp. 3d 2021 WL 5779939, at *12 (S.D.) ………...… 27

11) *Health Professionals for Informed Consent v Bassett*
  No. 008575/2022, (NYS Supreme Court Onondaga, Jan. 15, 2023) ………… 27

12) *Henson v. City of Atlanta*
  *No.* 1:17-cv-3024, 2019 (N.D. Ga. June 18, 2019) …………………….… 19

13) *Let Them Choose v. San Diego Unified Sch. Dist.*
  No. D079906 (Cal. Ct. App. Nov. 22, 2022………………………………...…26

14) *Lisby v. Tarkett Ala., Inc.*
  No. 3:16-cv-01835, 2020 (N.D. Ala. Mar. 31, 2020)……………………… 19

15) *Matias v. Terrapin House, Inc.*
  No. 5:21-cv-02288, 2021 (E.D. Pa. Sept. 16, 2021) ………………………... 18

16) *Mayorga v. Alorica, Inc.*
      No. 12-21578-CIV, 2012 (S.D. Fla. July 25, 2012) ...........................… 19
17) *McKnight v. Renasant Bank*
      No. 121CV00139GHDDAS, 2022 (N.D. Miss. May 3, 2022) .................. 20
18) *Mendoza v. City of Palacios*
      962 F. Supp. 2d 868, 871 (S.D. Tex. 2013) ...................................... 17
19) *Nall v. BNSF Ry. Co.*
      917 F.3d 335, 341 (5th Cir. 2019)    ...........................….....…...    15
20) *Nevitt v. U.S. Steel Corp.*
      18 F. Supp. 3d 1322, 1331 (N.D. Ala. 2014) ...............................…....    19
21) *NFIB v. OSHA*
      595 U.S. No. 21A244 & 21A247 (2022) ....................….............:.....    26
22) *Pielage v. McConnel*
      516 F.3d 1282 (11th Cir. 2008) ....................................................    20
23) *Police Benevolent Assn. NYC v. NYC & NYC DOH,*
      2022 N.Y. Slip Op. 33185 (N.Y. Sup. Ct. 2022)    ...............…..…....    27

**Statutes**

ADA Amendments Act of 2008 ("ADA-AA") .........…..…....................... 17

42 U.S.C. § 12102(3)(A) ...............…........................................... 17

42 U.S.C. § 12112 .....................…................................................ 23

**Rules and Regulations**

29 C.F.R. § 1630.15(f) ....................…....................................... 19

**EEOC documents**

1)  "What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other
     EEO Laws Technical Assistance Questions and Answers" - *Updated on July 12, 2022*.......... 24

## JURISDICTION STATEMENT

This Court has original and exclusive jurisdiction under Title I of the Americans with Disabilities Act of 1990 and the Americans with Disabilities Act Amendments Act of 2008; 42 U.S.C. §12101 and 42 U.S.C. §12112(a), (b) and (d)(4) as it pertains to "Discrimination"; as implemented by 29 CFR § 1630.2; §1630.4; §1630.5; §1630.13 and 1630.14(b)(3), (c) & (d) as it pertains to adverse employment actions, employers and medical examinations and interventions.

Venue is proper in the Fifth Circuit of Appeals pursuant to 28 U.S.C. §1391(b)(2) because Plaintiff-Appellant resides in this District and a substantial part of the events or omissions giving rise to the claims occurred in this District.

The District Court made a final order on December 29, 2022, which disposes of the claims of the case, and gives rise to the need for this appeal.

## STATEMENT OF THE ISSUES

I. Whether the District Court erred by dismissing the complaint for failure to state a plausible claim of discrimination based upon disability.

    A. Plaintiff plausibly alleged that he was regarded as disabled and satisfied the elements of a discrimination case.

    B. The Court dismissed plaintiff's complaint based on incorrect legal conclusions.

        1) The Judge mischaracterized the plaintiff's claim.

        2) "Transitory and minor" is an evidentiary standard.

        3) The Court ignored "regarded as" rules of construction.

        4) The "Covid policy" regards all employees as in need of mitigation (disabled).

        5) The "Covid policy" assumes one person needs to submit to a medical treatment in order to treat someone else effectively.

        6) The "Covid policy" does not create a new legal duty and is not based upon legal authority.

II. Whether the District Court erred in dismissing the complaint by concluding that that the complaint failed to identify disability-related inquiries and medical examinations on the part of the defendant.

    A. The "Covid policy" is intended to identify and treat employees for a deadly, contagious disease (disability).

    B. The "Covid policy" is illegal, the employer lacks enforcement authority.

III. Whether the District Court erred in dismissing the complaint by concluding that Plaintiff's alleged adverse employment actions amounted to "nothing more than trivial slights" which could not support a retaliation claim under the ADA.

IV. Whether the District Court erred by determining that Plaintiff was not entitled to a further opportunity to amend his pleadings.

# STANDARD OF REVIEW

## I. *De novo* review

Rulings that order the dismissal of a complaint are reviewed *de novo*. The plaintiff requires a *de novo* review of this case because the court made procedural errors, mixed questions of fact and law, and made improper legal determinations in rendering its decision.

## II. Abuse of discretion: Judge Brown reached incorrect legal conclusions and refused to be ruled by guiding principles.

The ruling was made contrary to the facts of the case such that it appears arbitrary or motivated by something other than the evidence presented to the court.

The ruling was unreasonable under the circumstances. There is no basis for believing that one person must take a medical treatment for the protection of the health of another. There is no basis for a "Covid policy" which assumes everyone has the exact same condition simultaneously which requires the same medical treatment.

How can the court be impartial if it has the same "Covid-19 policy"? The court is advocating for the defendant and against the plaintiff. It is not neutral and not impartial, it is not providing even the appearance of justice.

The district court abused its discretion by ignoring that plaintiff alleged the necessary elements for a claim of discrimination based upon disability.

This demonstrates that the ruling is arbitrary and capricious and the judge is biased and prejudiced against the plaintiff.

The court is applying a more stringent standard to this *pro se* plaintiff than it would apply to professional lawyers., thus demonstrating the court is biased and prejudiced against the plaintiff.  Plaintiff admittedly may not be as skilled at writing a formal complaint as well as a professional lawyer, however this is not a justification for dismissing a complaint with prejudice.

The court ignored the fact that the plaintiff fulfilled the pleading requirements for a claim of discrimination and retaliation, thus demonstrating that the court abused its discretion.

**III. Plain error**

The court misapplied the "transitory' and minor" exemption standard. Specifically Judge Brown failed to recognize that 1) "transitory and minor" are both questions of fact that cannot properly be analyzed at the pleading stage;  2) there is no end-date to the defendant's unfounded perceptions; 3) the defendant claimed plaintiff was a "direct threat" which contradicts and precludes an exemption claim under "transitory" or "minor" element; and 4) Judge Brown failed to recognize that both standards of "transitory and minor" must apply.

The court failed to rule that the "Covid policy" is always pre-empted by state law and is at odds with hundreds of years of public health policy, federal statutes, and the ADA.

The court failed to rule in alignment with the 2008 ADA-AA, which clearly states that the question of the plaintiff's disability is not the focus, but rather the focus is on establishing whether the employer complied with its legal duties under disability law.

The court failed to recognize that the policy itself does not comply with the ADA because of the way it was carried out: it failed to allow employees to claim exceptions to the policy under the provisions of the ADA and it failed to consider employees with disabilities or employees regarded as disabled by the policy.

## STATEMENT OF THE CASE

On January 31, 2022, plaintiff filed a complaint against his employer, BASF, for violations of the Americans with Disabilities Act ("ADA") for discrimination and retaliation on the basis of disability.

On March 3, 2022, plaintiff filed an amended complaint, in which he claimed that his employer imposed non-job-related medical inquiries and medical treatments upon all employees as a condition of employment in direct violation of the ADA. Chancey alleged that defendant's policies and procedures demonstrate that it discriminated against plaintiff based upon perceived disability. When plaintiff objected and gave notice to the defendant that he was a qualified individual with a disability who was being "regarded as" having a disability, the defendant continued to impose mitigation measures[1] without first conducting an individualized assessment to determine if he was a "direct threat". Defendant used policies and procedures to harass, isolate, segregate, limit, classify, deny equal access and impose non-job-related medical exams and inquiries upon plaintiff. Defendant also retaliated against plaintiff by interfering with his rights, imposing punitive measures including isolation and threats of disciplinary action and termination, which are prohibited under the ADA and ADA-AA.

---

[1]including medical examinations, medical inquiries, medical interventions including mask-wearing, and requests for medical records.

- 12 -

On April 4, 2022, the defendant filed a motion to dismiss the complaint arguing that (1) Chancey was not a qualified individual with a disability; (2) that defendant did not engage in prohibited "medical examinations" or "disability-related inquiries"; and (3) claimed that plaintiff alleged adverse employment actions were "petty slights" and noted that the adverse actions had not deterred him from filing an EEOC charge.

On April 18. 2022, the plaintiff responded to the motion to dismiss showing that he had sufficiently alleged that he as a qualified individual with a disability and he corrected the defenses out-of-date construction standards for the "regarded as" prong; which no longer includes a showing of impairment. He also showed that the EEOC guidance is specific about the employer needing "objective evidence" prior to treating the employee as a "direct threat" based upon a diagnosed medical condition. Without an individualized assessment, the inquiry will not qualify as job-related and would be prohibited. The defendant is required to provide the individualized assessment it is relying upon to consider the plaintiff as a "direct threat"; and despite plaintiff alleging that he asked for this assessment numerous times, defendant has failed to produce this assessment. Plaintiff also argued that all the adverse actions taken were not "petty slights" because they all had an element of duress involved.

On April 12, 2022, plaintiff filed a motion to appoint a special master to resolve the Court's conflict of interest, which was denied by the Court on June 15, 2022.

On December 29, 2022, the District Court issued an order which held that dismissal without leave to amend was warranted for Chancey's claims.

On January 13, 2023, Chancey filed a Notice of this Appeal. On January 17, 2023, the Court docketed the appeal.

## STATEMENTS OF FACT

These court's policies and the defendant's policies both discriminate based upon the wild speculation that everyone has a disability (contagious disease) and must submit to non-job-related mitigation measures; and be treated for an un-assessed disability without regard for informed consent and without any evidence or diagnosis.

Plaintiff's complaint states that even with such evidence, these medical interventions cannot be imposed upon anyone without judicial approval based upon actual evidence such as a medical diagnosis (individualized assessment under the criteria set forth in the Americans with Disabilities Act). No laws have changed; and claiming there is a pandemic is not a defense to violating federal and state disability laws, public health policy, due process and one's medical privacy rights.

**ARGUMENT AND AUTHORITIES**

**I. Whether the District Court erred by dismissing the complaint for failure to state a plausible claim of discrimination based upon disability.**

**A. Plaintiff plausibly alleged that he was regarded as disabled and satisfied the elements of a discrimination case.**

To state a claim for employment discrimination under Title I of the ADA, the plaintiff must allege that: (1) he has a "disability" or was "regarded as disabled"; (2) he was qualified for the position; and (3) he was subject to an adverse employment action because of his disability. *Nall v. BNSF Ry. Co.*, 917 F.3d 335, 341 (5th Cir. 2019).

The plaintiff sufficiently followed the rules of construction and alleged the following facts in his complaint in support of a claim of disability discrimination:

1) that his employer was subject to the ADA; (See Amended Complaint ("FAC"), Count I ¶ 4)

(2) that he was an individual with a disability within the meaning of the ADA under the "regarded as" prong; (See FAC, Count I ¶¶ 7-12, 21, 22, 24, 29)

(3) that he was qualified to perform the essential functions of his job; (See FAC, Count I ¶¶ 8, 11, 38)

(4) that he was subjected to adverse employment actions because of his disability (See FAC, Count I ¶¶ 25-33, 36, Count II ¶¶ 6, 8, 11-13, 18, 19, 23, 25-37, 41, 42)

In his amended complaint, the plaintiff alleged that the defendant discriminated against him based on a perceived disability. The plaintiff alleged that the defendant's

"Covid policy" assumed that he either carried a deadly, contagious disease or that he had an impaired immune system and an impaired respiratory system that made him vulnerable to contracting a deadly contagious disease, and that said policy was explicitly designed to mitigate the disability which the defendant regarded the plaintiff as having. Through the enforcement of its "Covid policy", defendant imposed several medical examinations and treatments upon plaintiff which the plaintiff alleged were prohibited because they were not based upon objective evidence nor were they needed in order for him to able to perform his essential job functions.

When plaintiff refused the "Covid policy" mitigation measures, because they were imposed without any individualized assessment and were not job-related, he was subjected to adverse employment actions, such as: lack of redress, he was falsely given a written safety violation warning which claimed he was a safety hazard; he was falsely accused of "abandoning his job", these false accusations were designed to create a fictitious record designed to fire him; he was refused access to the job site; he was threatened with termination; he was refused access to his office, the break room and rest rooms; he was coerced by management to undertake medical treatments for a perceived, yet undiagnosed disability, and he was continually harassed despite filing an EEOC Charge.

Judge Brown did note that a plaintiff claiming disability discrimination under the "regarded as" prong, "need only plausibly allege his 'employer perceived him as

having an impairment' and that it discriminated against him on that basis" and that "[]he has been subjected to an action prohibited under [the ADA] because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 230 (5th Cir. 2015) (quoting 42 U.S.C. § 12102(3)(A)). "This 'whether or not' language was enacted as part of the ADA Amendments Act of 2008 [("ADAAA")]." *Mendoza v. City of Palacios*, 962 F. Supp. 2d 868, 871 (S.D. Tex. 2013).

**B. The Court dismissed plaintiff's complaint based on incorrect legal conclusions.**

Judge Brown however made a series of incorrect conclusions that resulted in him determining that Plaintiff's allegations were insufficient to state a claim under the ADA. Judge Brown concluded that "having Covid" is not a disability. He mischaracterized the plaintiff's claim and stated that the plaintiff alleged he was being "regarded as" "having Covid". Then Judge Brown concluded that this must not be a disability either.

These three false premises need to be detangled. It is by no means settled that "having Covid" is not a disability. Judge Brown is not qualified to determine that all plaintiffs who claim to "have Covid" cannot ever claim disability. The federal judiciary is not in agreement about "Covid". Compare *Champion v. Mannington Mills, Inc.*, 538 F. Supp. 3d 1344, 2021 U.S. Dist. LEXIS 89381, 2021 WL2212067, at *5 (M.D. Ga.

2021) (explaining that it would be absurd to hold that workers who contracted COVID-19 were "disabled"), with *Matias v. Terrapin House, Inc.*, No. 5:21-cv-02288, 2021 U.S. Dist. LEXIS 176094, 2021 WL 4206759, at *4 (E.D. Pa. Sept. 16, 2021) (citing agency guidance to conclude that COVID-19 may be an ADA disability as it is not always transitory and it is never minor).

**1) The Judge mischaracterized the plaintiff's claim.**

Chancey never claimed to "have Covid", in fact, he asked the defendant repeatedly to provide the statute-required  diagnosis and assessment, but it failed to produce the records.  The disability Chancey is claiming is that he is being regarded as an on-going "direct threat" of a deadly, contagious disease <u>as long as</u> he refuses non-job-related medical interventions.

Judge Brown was practicing law from the bench rather than being a neutral arbiter. He agreed with and allowed the improperly attempted defense of "transitory and minor" to sway his decision. Judge Brown failed to properly analyze the exemption standard of "transitory <u>and</u> minor" as required by the rules. Specifically Judge Brown failed to recognize that 1) "transitory and minor" are both questions of fact that cannot properly be analyzed at the pleading stage;  2) there is no end-date to the defendant's unfounded perceptions; 3) the defendant claimed plaintiff was a "direct threat" which contradicts and precludes an exemption claim under "transitory" or "minor" element; and 4) he failed to recognize that both standards of "transitory and minor" must apply.

These incorrect legal conclusions are the sole basis of the Judge incorrectly concluding that Chancey did not sufficiently state a claim of disability and the appeals court must correct these errors.

**2) "Transitory and minor" is an evidentiary standard.**

A perceived impairment's severity is an objective—and factual— inquiry. See *Nevitt v. U.S. Steel Corp.,* 18 F. Supp. 3d 1322, 1331 (N.D. Ala. 2014); see also 29 C.F.R. § 1630.15(f) ("Whether the impairment at issue is or would be 'transitory and minor' is to be determined objectively."). Whether a perceived impairment is "transitory and minor" is a quintessential question of fact that courts usually do not address at the pleading stage. See, *e.g., Lisby v. Tarkett Ala., Inc.,* No. 3:16-cv-01835, 2020 U.S. Dist. LEXIS 55927, 2020 WL 1536386, at *5 (N.D. Ala. Mar. 31, 2020) (using expert testimony to evaluate **[*15]** whether a jury could conclude that an impairment was "transitory and minor" at summary judgment). See *Mayorga v. Alorica, Inc.,* No. 12-21578-CIV, 2012 U.S. Dist. LEXIS 103766, 2012 WL 3043021, at *9 n.2 (S.D. Fla. July 25, 2012) (observing that whether an impairment is minor is not usually decided before summary judgment). See *Henson v. City of Atlanta, No.* 1:17-cv-3024, 2019 U.S. Dist. LEXIS 238612, 2019 WL 12426046, at *11 (N.D. Ga. June 18, 2019) (denying summary judgment because, "[v]iewing the facts in the light most favorable to [plaintiff], there is at least some evidence from which a reasonable jury could conclude that [defendant] perceived [him] to be impaired" (quotation

omitted) (alternations in original)). To the extent facts are in dispute at the pleading stage, courts are to "take the factual allegations in the complaint as true." *Pielage v. McConnel,* 516 F.3d 1282 (11th Cir. 2008).

**3) The Court ignored "regarded as" rules of construction.**

Judge Brown also cited rulings which refer to cases where the plaintiffs proceeded under the "actual" (diagnosed) disability prong of the ADA, which has different rules of construction and pleading standards than the "regarded as" prong. Therefore, they are not applicable to the case at hand.

For example, in *McKnight v. Renasant Bank,* the plaintiff alleged that he "had Covid-19" and therefore *McKnight* is a case of actual disability, despite the fact that the plaintiff proceeded under the "regarded as" prong. Once *McKnight* claimed a specific disability, he waived his medical privacy rights when he voluntarily disclosed his medical records and submitted to medical examinations. Therefore, he had to abide by different pleading standards than the case at hand.

Judge Brown only reviewed "actual" disability case citations, instead of looking for cases based upon the "regarded as" prong and his conclusions became skewed because he was trying to mischaracterize the plaintiff's claim. The Court should have reviewed, and cited, a case in which the "transitory and minor" argument is based upon the perception of the defendant. *Eshleman v. Patrick Industries Inc,* No. 19-1403 (3d

Cir. 2020) showed that a person with an actual condition that is both transitory and minor may pursue a "regarded as" claim, because the perception of the employer is the key to a "regarded as" case. The appeals court stated that the district court erred because it failed to address whether the impairment that Patrick Industries <u>perceived</u> was transitory and minor, despite the fact that the actual surgery and recovery that Eshleman required was not going to last six months[2]. Eshleman argued that Patrick Industries <u>perceived</u> his recent medical issues to signify an on-going health condition and thus the <u>perception</u> he faced was not transitory and minor. The appeals court agreed and remanded the case back to the district court.

### 4) The "Covid policy" regards all employees as in need of mitigation (disabled).

In citing *Champion v Mannington Mills,* Judge Brown determined that because that defendant was following "the relevant public health guidance" regarding Covid-19 in its actions towards plaintiff, this necessarily meant that the defendant did not regard that plaintiff as disabled.

> "To hold otherwise would mean that every person in the United States who was (or who may be) sent home" or quarantined from other co-workers for refusing to be vaccinated, or asked to accept other testing and masking requirements, "would be disabled for the purposes of the ADA and every such employer covered by the ADA potentially liable." *Id.*

The "Covid policy" does indeed regard every employee as a contagious threat that needs mitigation, yes, every single employee. The district court rejected this position, yet it fails to explain why. This is exactly what the defendant's "Covid

---

[2]    Six months or less has been accepted as the guideline for establishing "transitory".

policy" does: it simultaneously assumes that all "unvaccinated" employees, such as plaintiff, are impaired by a contagious disease and by a suppressed or weak immune and respiratory systems that made them vulnerable to "Covid-19". The policy itself irrationally treats everyone as if they had a deadly contagious disease, as if they have the same exact <u>disability</u>.

**5) The "Covid policy" assumes one person needs to submit to a medical treatment in order to treat someone else effectively.**

The policy also irrationally assumes that Bob must take a medical treatment in order for Mary's medical treatment to work. The Court holds the illogical belief that one person needs to submit to a medical treatment in order to treat someone else effectively. The policy causes the defendant to act irrationally by regarding the plaintiff and others as having an illness without any diagnosis, and then seeking to treat everyone with the same medical intervention without any diagnosis. This behavior is defined as a mental illness in the Fifth Edition of the <u>Diagnostic and Statistical Manual for Mental Health</u>.[3] The policy is so irrational that it causes people to behave as if they have a mental illness.

**6) The "Covid policy" does not create a new legal duty and is not based upon legal authority.**

Describing prohibited medical inquiries and treatments as "public health guidance" does not magically make them permitted. The inquiries and treatments only exist to "prevent Covid", there is no other reason. They are necessarily designed to

---

[3]   Factitious Disorder or Munchausen Syndrome by Proxy.

determine who has been mitigated for the disability and who has not been mitigated. Anyone who has not been mitigated is threatened with losing their job, despite the fact that the employer has no legal duty and no legal authority to impose the mitigation measures.

The "public health guidance" the court mentioned did not create any new legal duty nor legal authority for the defendant to administer its "Covid policy". The defendant is not the Department of Health. The defendant can no more "prevent the spread of Covid-19" than a law prevent it raining on Tuesday.

**II.  Whether the District Court erred in dismissing the complaint by concluding that that the complaint failed to identify disability-related inquiries and medical examinations on the part of the defendant.**

The Court found that plaintiff only identified, in his allegations, medical inquiries and treatments which the Judge determined could not be considered either as non-job-related or as designed to screen for disability. The Judge noted that the provision does not prohibit all medical inquires, but only those which are designed to elicit answers "as to whether such employee is an individual with a disability or as to the nature or severity of the disability." *Conroy v. N.Y. State Dep't of Corr. Servs.,* 333 F.3d 88, 94 (2d Cir.2003) (quoting 42 U.S.C. § 12112). The Court was especially convinced by defendant's argument that the alleged inquiries and treatments proposed were consistent with recent EEOC guidance specifically related to "Covid policy" inquiries and he looked no further.

- 23 -

## A. The "Covid policy" is intended to identify and treat employees for a deadly, contagious disease (disability).

While it is true that "not all medical inquiries are prohibited", the ones established in the "Covid policy" are specifically designed to determine whether the plaintiff has a deadly, contagious disease, that is, a disability. The treatments imposed by the "Covid policy" are intended to treat this perceived disability. How can defendant's actions not be disability-related inquiries when they are prescribed by its own "Covid policy", whose stated purpose is to prevent the spread of a disability?

The defendant also did not cite the most recent and relevant version of the EEOC guidance on the subject which states that an employer must have <u>objective evidence of a disease</u> before it makes medical inquiries or imposes testing. The EEOC counsels employers that if they want to ask a particular employee[4] to "test" and answer medical inquiries, then that employer is required to first have a diagnosis of that individual employee before making disability-related inquiries.

> "If an employer wishes to ask only a particular employee to answer such questions, or to have a temperature reading or undergo other screening or testing, the ADA requires the employer to have a reasonable belief based on objective evidence that this person might have the disease."[5]("Disability-related Inquiries and Medical Exams", A-9)

The defendant never performed an individualized assessment thus it did not have the "objective evidence" required to proceed. The defendant has not met the burden to

---

4 Such as focusing testing on "unvaccinated" employees claiming exemption under the ADA, for example.

5 "What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws *Technical Assistance Questions and Answers*" - *Updated on July 12, 2022.* https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws

claim "business necessity" which is discussed in the same EEOC guidance which clearly shows that the business necessity standard requires proof of a medical condition that meets the "direct threat" standard and it must also be "job-related":

> "...once an employee begins work, any disability-related inquiries or medical exams must be "job-related and consistent with business necessity." One way inquiries and medical examinations meet this "business necessity" standard is if they are necessary to determine whether a specific employee has a medical condition that would pose a "direct threat" to health or safety..." *("Disability-related Inquiries and Medical Exams",* Introduction)

The defendant did mis-classify the plaintiff as a "direct threat" but it never performed the ADA required assessment for legally claiming the plaintiff was a "direct threat". The defendant has failed to meet the business necessity standard which is required before proceeding to impose the tests, inquiries and treatments imposed by the "Covid policy". The "Covid policy" is not ADA compliant. Judge Brown failed to recognize or raise these issues when he was swayed by the defendant's argument. Is it incompetence or bias? Judge Brown demonstrated his grasp of essential legal concepts marking the boundaries of the employee-employer relationship when he ruled in *Georgia v Biden* which is discussed further on.

Furthermore, since the medical exams and inquiries outlined in the defendant's "Covid policy" were not imposed by any law, the defendant had no legal duty nor authority to impose them on its employees.

**B. The "Covid policy" is illegal, the employer lacks enforcement authority.**

EEOC commentary did not create a new legal duty nor authority for employers to carry out public health guidelines. The EEOC is not the Department of Health. Nor is there a court order that imposes the Covid-19 guidelines unto citizens.

In California, the 4th District Court of Appeal recently held that school districts cannot impose vaccine mandates of their own —on top of the vaccines required by the state— as a precondition for classroom attendance.[6]

The Supreme Court in *NFIB v. OSHA* found that OSHA had no authority to make a vaccine mandate or impose masking and testing because it found that OSHA was trying to address a universal risk rather than a workplace specific risk "tethered in a causal sense to the workplace." "Workplace safety and health standards can only address occupation-specific risks and hazards that employees face at work." citing *Flower World, Inc. v. Sacks,* No,21-35641, Lexis22254,*14 (9th Cir. June 10, 2022)

On October 25, 2022, New York Supreme Court Judge Porzio issued a ruling in *Garvey v. The City of New York* stating that the DOH and the Mayor never had the authority to exclude employees from their workplace. He also asked the sensible question: "How can a [new] "condition of employment" be created during a term of employment?" He finds that it cannot. He also found it ridiculous to expect employees to take medical treatments for the benefit of other people. He stated that everyone

---

[6] *Let Them Choose v. San Diego Unified School District*, 4th District Court of Appeals, California, November 22, 2022. https://ca-times.brightspotcdn.com/5c/86/5b6f58dd4495a769e26f98cfa10b/d079906opinion.pdf

makes their own medical choice of whether to get a vaccination or not and that individuals are responsible for their own health, not the health of others.

On September 23, 2022, New York Supreme Court Judge Frank ended the New York City vaccine mandate after hearing *Police Benevolent Assn. NYC v. NYC & NYC DOH*. He ruled that the NYC DOH does not have the authority "...[to] impose adverse employment actions [in order] to enforce those ["vaccine"] mandates and that it was not "...lawful for the DOH to implement conditions of employment to members of the PBA."

This was echoed for the entire state of New York by the recent ruling in *Health Professionals for Informed Consent v Bassett* which found that the New York State DOH is acting outside its authority. Judge Neri ruled that by adopting the regulation of 10 NYCRR §2.61 the "DOH blatantly violated the boundaries of its authority as set forth by the legislature." Significantly, this ruling clarifies that even doctors, nurses, and other health professionals cannot be denied their rights even though they work in hospitals and care-facilities.

In the 5th Circuit, this Judge Brown enjoined Biden's Executive Order No. 14043 seeking to impose a vaccine mandate on federal employees at the penalty of their jobs. Judge Brown found in *Georgia v. Biden*, that the President could not require "... federal employees to get a COVID-19 vaccine or obtain a religious or medical exemption

[because the order] was not an employment regulation". He found that the employer was acting outside the boundaries of the workplace and was trying to impose measures that are beyond its authority "to regulate workplace conduct of... employees, but not their conduct in general." This same boundary is expressed in the ADA as a prohibition against non-job-related medical inquiries and treatments.

Judge Ross of the DC Supreme Court found in his Order enjoining D.C. Mayor Bowser from enforcing the vaccine mandate for Police that:

> "A vaccine mandate is not an everyday exercise of power,...It is instead a significant encroachment into the life — and health — of an employee. It is strikingly unlike any other workplace regulations typically imposed, as it 'cannot be undone at the end of the workday.' Thus, there is an expectation that a vaccine mandate must come from a legislative body." (*Fraternal Order of Police v District of Columbia*)

The "Covid policy" cannot be considered a "legitimate" policy because it fails to comply with the ADA, and it has no legal authority behind its implementation, oversight or enforcement, and is therefore <u>illegal</u>.

**III.  Whether the District Court erred in dismissing the complaint by concluding that Plaintiff's alleged adverse employment actions amounted to "nothing more than trivial slights" which could not support a retaliation claim under the ADA.**

The Court ruled that "Chancey's allegations, if proven, [were] nothing more than petty slights or minor annoyances that [did] not rise to the level of an adverse employment action." Likewise, Judge Brown established that none of the actions alleged by plaintiff "actually dissuaded him from submitting to BASF management repeated objections to BASF's Covid-19 policies or filing a charge of discrimination".

This Court is once again creating a much higher threshold than Congress intended for individuals to claim access to rights protected under the ADA and ADA-AA. The Court watered down the ADA prior to 2008 by legislating from the bench and raising the threshold to prove claims under the ADA that were set by the U.S. Congress.

Chancey has fully alleged that the "Covid policy" itself is a "materially adverse change in the terms and conditions" of his employment because it imposes non-job-related medical inquiries and treatments upon him as a new condition of employment.

In addition, the ADA is a rights-based policy, thus actions intended to dissuade employees from claiming their rights are considered materially adverse actions. Plaintiff was constantly dissuaded from claiming his rights and the fact that he persevered in claiming them does not mean that defendant is off-the-hook because it did not effectively bully plaintiff into waiving his rights. The defendant incorrectly quoted case law to give the impression that the only standard of whether an action is "adverse" is whether the action is likely to deter someone from filing an EEOC complaint. Judge Brown took the bait and ran with it. He dismissed all the plaintiffs adverse actions essentially because Chancey continued to claim his rights despite threats, coercion, and duress.

However, the actual standard of whether an action is "adverse" is whether the action is likely to deter the individual from claiming their rights. The *Dehart v. Baker*

*Hughes Oilfield Operations, Inc* case cited by the defendant did not change the definition of adverse actions. In that particular case, the *Dehart* plaintiff alleged that a co-worker was fired after filing an EEOC complaint, and the *Dehart* plaintiff tried to argue that this firing was an adverse employment action which affected her personally. This is why the court stated that she would need to allege that she was deterred from filing an EEOC complaint in order for that particular charge to stand.  Whether any plaintiff is deterred from filing an EEOC complaint is not the standard of determining an adverse employment action.  The question is whether any actions were taken in order to dissuade the plaintiff from claiming his rights.  Is Chancey able to work at BASF in an environment that does not pressure him to take medical treatments and answer medical inquiries that have nothing to do with his ability to perform his job?  If Judge Brown had asked this question, the answer would be "No, he has been harassed many times, on an on-going basis, and Chancey has been repeatedly threatened with termination."  Chancey is likely still employed only because he has a pending case in court, the defendant did not pause its adverse actions when he filed an EEOC claim.

> "...plaintiff mentions many times in his affidavit that he felt coerced, was worried about his job, took administrative actions to protect his job, and states that his job was threatened despite taking these actions.  These are alleged facts and the motion is not the proper place to question them; they will be properly examined through discovery.
>
> The deeper issue here is that the defendant failed to respond properly to plaintiff's ADA claim.  The moment the plaintiff claimed disability the defendant is required to respond with either a beneficial action, such as providing equal access, or a neutral action such as claiming an exemption from the ADA.  The defendant failed to understand its legal duty under the ADA and instead responded with a series of adverse actions." (Response to Motion to Dismiss, p.8)

Congress stated in 2008 that the main focus of the courts should be whether the employer is satisfying its obligations under the ADA. The defendant has failed to act in a manner that preserved Chancey's rights, eg; a fundamental lack of redress as all attempts to solve the discrimination through Human resources only increased the threats; and the defendant engaged in actions to deter Chancey from claiming his rights, eg; false claims of job abandonment, false records of him being a safety hazard, threats of termination. Judge Brown should have been able to recognize that "the anti-retaliation provision seeks to prevent an employer from interfering with an employee's efforts to secure or advance enforcement of the Act's basic guarantees." since he quoted the case in his ruling. (See *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53 (2006)).

The adverse employment actions were not "petty slights" nor "minor annoyances" as Judge Brown characterized. They threatened the livelihood of a person. By what standard does Judge Brown assert that being forced to submit to a non-job-related, experimental medical treatment as a condition of employment, under threat of termination, is a "trivial slight"? By what standard does Judge Brown assert that being coerced to inject a substance in your veins that has been deemed experimental by the FDA, without any individualized assessment, and which is a life-altering decision, is only a "minor annoyance"? Is this any different than a woman being told by her manager that she has to sleep with him as a new condition of

- 31 -

employment and then having the Human Resources Department brush it off as "Boys will be boys."?

Judge Brown cites case law that predates the ADA-AA of 2008, which can not be relied upon as Congress established a lower standard of coverage after 2008. Judge Brown clearly intends to advocate for the "Covid policy" and finds a way to do that in his ruling by using outdated caselaw to support his "petty slights" theory. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006); *Grice v. FMC Techs., Inc.*, 216 F. App'x 401, 407 (5th Cir. 2007); *Dehart v. Baker Hughes Oilfield Operations, Inc.*, 214 F. App'x 437, 442 (5th Cir. 2007),

In its ruling, the Court cited on page 11 several of the adverse employment actions alleged by plaintiff on his complaint. However, in the very next sentence, he determined that plaintiff did not establish materially adverse actions and called them "petty slights". The Judge's contradictory statements and illogical conclusions show that he is biased against the plaintiff. This is because the court holds the same policies as the defendant. He is not being neutral arbiter, but is an advocate for defendant and its "Covid policy", because the courts hold the same "Covid policies".

**IV.   Whether the District Court erred by determining that Plaintiff was not entitled to a further opportunity to amend his pleadings.**

Judge Brown also dismissed the complaint with prejudice and denied the plaintiff an opportunity to amend his pleading to correct any faults. The court is applying a

more stringent standard to this *pro se* plaintiff than it would apply to professional lawyers., thus demonstrating the court is biased and prejudiced against the plaintiff. Plaintiff admittedly may not be as skilled at writing a formal complaint as well as a professional lawyer, however this is not a justification for dismissing a complaint with prejudice. The plaintiff did make an effort to have an ADA advocate assigned as a specialized master to the case in order to assist the Judge, but the Judge refused and this Appeals court affirmed.

## CONCLUSION

For the reasons herein the judge's decision constitutes an abuse of discretion, failed to apply the law correctly, is clearly erroneous and should be reversed in the interests of justice.

WHEREFORE the appellant requests an order reversing the trial court's decision and remanding it to trial court for further proceedings.

DATED this 16 day of February, 2023.

Brian Chancey, Appellant

- 33 -

## CERTIFICATE OF COMPLIANCE

I, Brian Chancey, do certify the following:

1. This document complies with FRAP 32(a)(7)(B) because, excluding parts of the document exempted by FRAP 32(f) this document contains 6126 words.

2. This document complies with FRAP 32 (a)(5) and (6) because this document has been prepared using Times New Roman font in 14-point.

By: _

## CERTIFICATE OF SERVICE

I, Brian Chancey, hereby certify that a true and correct copy of the foregoing was duly served upon the defendant's attorneys Carolyn Russell and Ryan Swink both at the address of One Allen Center, 500 Dallas Street, Suite 3000; Houston, Texas 77002 via first class mail on this 16 day of February 2023.

I further certify that ~~four~~ seven true and correct copies of the foregoing were duly served upon the Fifth Circuit Court of Appeals at the address of 600 S. Maestri Place, Suite 115; New Orleans, LA 70130-3408 via first class mail on this 16 day of February, 2023.

By: _

## APPENDIX

1. Final Order dismissing the case

2. The record is transmitted electronically by the clerk.

United States District Court
Southern District of Texas
**ENTERED**
December 29, 2022
Nathan Ochsner, Clerk

# In the United States District Court
# for the Southern District of Texas

## GALVESTON DIVISION

No. 3:22-cv-34

BRIAN CHANCEY, *PLAINTIFF*,

v.

BASF CORPORATION, *DEFENDANT*.

## MEMORANDUM OPINION AND ORDER

JEFFREY VINCENT BROWN, *UNITED STATES DISTRICT JUDGE*:

Before the court is the defendant BASF Corporation's motion to dismiss Chancey's amended complaint under Rule 12(b)(6). Dkt. 9. The court grants the motion.

## I.    BACKGROUND[1]

This is an employment-discrimination suit arising under the Americans with Disability Act (ADA). Dkt. 6.

The plaintiff, Brian Chancey, has worked for BASF since June 2020.

---

[1] When hearing a motion to dismiss under Rule 12(b)(6), factual allegations in the complaint must be taken as true and construed favorably to the plaintiff. *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993). The "facts" in this section are taken from the plaintiff's pleadings.

*Id.* at 3. Chancey alleges that on August 10, 2021, BASF began demonstrating by its COVID-19 policies and practices that it regarded him "as having a disability of an impaired immune system and impaired respiratory system, and began responding to [him] as if he had a contagious disease." *Id.* Chancey alleges BASF never conducted an individualized assessment to determine whether he was a direct threat. *Id.*

Chancey states he notified BASF that he was claiming protection under the ADA because BASF was treating him as disabled. *Id.* In response, Chancey alleges, BASF offered a series of accommodations that he declined. *Id.* at 5. BASF "continued without cessation to harass the plaintiff based upon disability by sending him numerous communications coercing him to accept various accommodations or suffer adverse employment actions." *Id.*

Further, Chancey alleges BASF imposed upon him accommodations which included isolation and segregation: demanding he remain 6 feet away from co-workers; refusing him access to the work space, his office, the staff room, and rest rooms; making him work remotely; limiting room occupancy; segregating Chancey to a part of the work space; and implementing first-contact protocols and quarantine without due process. *Id.* at 6. Chancey alleges BASF has classified him as "unvaccinated," is widely sharing this information with other employees without regard to confidentiality, and

encourages employees to harass him with repetitive emails, intimidating interactions, and threats of termination. *Id.*

Chancey alleges BASF requires unvaccinated employees such as him to submit to weekly accommodations such as medical tests at his own expense, enhanced quarantine measures based upon "close contact," and masking. *Id.* BASF also falsely classified Chancey as a "safety hazard" without assessment in a written safety violation and threatened to accuse him of abandoning his job despite BASF preventing him access to the job site. *Id.* at 7.

Chancey alleges that after he accused BASF of discriminating against him under the ADA, his managers and supervisors began to "unceasingly retaliat[e]" against him. *Id.* at 12. Chancey lists the following as adverse employment actions taken against him: BASF created false employment records stating that Chancey was a "safety hazard"; BASF threatened to accuse him of abandoning his job while preventing him access to the job site; he was threatened with termination on several occasions and given deadlines for termination; he was refused access to the job site, his office, the break room, and rest rooms; he was repeatedly coerced by management to undertake accommodations for a "perceived yet undiagnosed disability"; BASF threatened him with incurring extra costs for weekly antigen testing; and BASF's ADA compliance officer refused to mitigate the retaliation or aid

and encourage him in enjoying rights protected under the ADA. *Id.* at 14.

Chancey alleges three causes of action under the ADA: (1) disability discrimination; (2) improper medical exams and inquiries; and (3) retaliation.

BASF has moved to dismiss. Dkt. 9.

## II.    LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim, a plaintiff must plead facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The claim is facially plausible when the well-pleaded facts allow the court to reasonably infer that the defendant is liable for the alleged conduct. *Id.* "The court does not 'strain to find inferences favorable to the plaintiffs' or 'accept conclusory allegations, unwarranted deductions, or legal conclusions.'" *Vanskiver v. City of Seabrook, Tex.*, No. CV H-17-3365, 2018 WL 560231, at *2 (S.D. Tex. Jan. 24, 2018) (quoting *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)).

Naked assertions and formulaic recitals of the elements of the cause of action will not suffice. *Iqbal*, 556 U.S. at 678. Even if the facts are well-pleaded, the court must still determine plausibility. *Id.* at 679. Where a

party's asserted claim arises out of "statutes under which as a matter of law [the party] d[oes] not have a viable claim," the claim must be dismissed. *Kiper v. BAC Home Loans Servicing, LP*, No. 4:11-CV-3008, 2012 WL 5456105, at *1 (S.D. Tex. Nov. 6, 2012).

## III. ANALYSIS

### A. Disability Discrimination

The ADA is a federal antidiscrimination statute designed to remove barriers that prevent qualified individuals with disabilities from enjoying the same employment opportunities that are available to individuals without a disability. *See* 42 U.S.C. §§ 12101–12113; *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 674–75 (2001); *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 696 (5th Cir. 2014). To state a claim for employment discrimination under Title I of the ADA, the plaintiff must allege that: (1) he has a "disability" or was "regarded as disabled"; (2) he was qualified for the position; and (3) he was subject to an adverse employment action because of his disability. *Nall v. BNSF Ry. Co.*, 917 F.3d 335, 341 (5th Cir. 2019).

The ADA defines a disability as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1); *Delaval v. PTech Drilling*

*Tubulars, L.L.C.*, 824 F.3d 476, 479 n.2 (5th Cir. 2016); 29 C.F.R.
§ 1630.2(g)(2) (describing these as the "actual disability," "record of," and
"regarded as" prongs). To state a viable claim under the "regarded as" prong,
a plaintiff must allege "[]he has been subjected to an action prohibited under
[the ADA] because of an actual or perceived physical or mental impairment
whether or not the impairment limits or is perceived to limit a major life
activity." *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 230 (5th
Cir. 2015) (quoting 42 U.S.C. § 12102(3)(A)).

  "This 'whether or not' language was enacted as part of the ADA
Amendments Act of 2008 [("ADAAA")]." *Mendoza v. City of Palacios,* 962
F. Supp. 2d 868, 871 (S.D. Tex. 2013). "The ADAAA overrules prior authority
'requiring a plaintiff to show that the employer regarded him or her as being
substantially limited in a major life activity.'" *Burton,* 798 F.3d at 230
(quoting *Dube v. Tex. Health & Human Servs. Comm'n,* No. SA–11–CV–
354–XR, 2012 WL 2397566, at *3 (W.D. Tex. June 25, 2012)); *see also Neely
v. PSEG Texas, Ltd. P'ship,* 735 F.3d 242, 245 (5th Cir.2013).

  BASF argues that Chancey fails to satisfy the essential elements of a
discrimination claim because he cannot show BASF believed his impairment
substantially limited one or more major live activities. Dkt. 9 at 4. However,
BASF relies on outdated authority, *Kemp v. Holder,* 610 F.3d 231, 237 (5th

Cir. 2010), in arguing that Chancey is required to show BASF regarded him

as substantially limited in a major life activity. Chancey need only plausibly

allege his "employer perceived him as having an impairment" and that it

discriminated against him on that basis. *Mendoza,* 962 F. Supp. 2d at

871. Chancey has alleged BASF regarded him "as having a disability of an

impaired immune system and impaired respiratory system, and began

responding to the plaintiff as if he had a contagious disease." Dkt. 6 at 3.

A number of district courts within this circuit have held that similar

allegations are insufficient to state a claim under the ADA.[2] So, too, have

courts outside of this circuit.[3] "Just because [BASF] followed the relevant

---

[2] *McKnight v. Renasant Bank,* No. 121CV00139GHDDAS, 2022 WL
1342649, at *6 (N.D. Miss. May 3, 2022) (holding a minor case of COVID-19 did
not qualify for protection under the ADA because it met the exception for
temporary illnesses for which no limitations resulted); *Milteer v. Navarro Cnty.,
Texas,* No. 3:21-CV-2941-D, 2022 WL 1321555, at *9 (N.D. Tex. May 3, 2022)
(holding that plaintiff's age and "health," as pleaded related to COVID-19
pandemic, did not constitute a disability protected under the ADA or
Rehabilitation Act); *Alvarado v. ValCap Grp., LLC,* No. 3:21-CV-1830-D, 2022 WL
19686, at *7 (N.D. Tex. Jan. 3, 2022) (holding plaintiff failed to plausibly plead her
employer perceived her as disabled merely because of her possible exposure to
COVID-19 through a co-worker).

[3] *See Champion v. Mannington Mills, Inc.,* 538 F. Supp. 3d 1344, 1348 (M.D.
Ga. 2021) (holding plaintiff's brother's COVID-19 infection was not a "disability"
within the meaning of the ADA); *Payne v. Woods Servs., Inc.,* 520 F. Supp. 3d 670,
679 (E.D. Pa. 2021) (holding the plaintiff failed to allege any facts regarding his
symptoms or impairments as a result of COVID-19 infection that supported
contention his employer regarded him as disabled); *Rice v. Guardian Asset Mgmt.,
Inc.,* No. 3:21-CV-00693-AKK, 2021 WL 4354183, at *3 (N.D. Ala. Aug. 19, 2021)

public health guidance" regarding COVID-19 in its actions towards Chancey "does not mean [it] regarded him as disabled." *Champion*, 538 F. Supp. 3d at 1350. "To hold otherwise would mean that every person in the United States who was (or who may be) sent home" or quarantined from other co-workers for refusing to be vaccinated, or asked to accept other testing and masking requirements, "would be disabled for the purposes of the ADA and every such employer covered by the ADA potentially liable." *Id.* "The [c]ourt soundly and easily rejects this position." *Id.*

Accordingly, Chancey's discrimination claim is dismissed with prejudice.

## B. Unlawful Medical Exams and Inquiries

Section 12112(d)(4)(A) of the ADA provides that "[a] covered entity shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or

---

(holding employee failed to meet pleading standard showing employer regarded her as disabled where it was merely following public health protocols concerning COVID-19); *Lewis v. Fla. Default L. Grp., P.L.*, No. 8:10-CV-1182-T-27EAJ, 2011 WL 4527456, at *6 (M.D. Fla. Sept. 16, 2011) (holding the undisputed evidence demonstrated plaintiff diagnosed with H1N1 virus fell into transitory and minor exception to ADA coverage for impairment); *Patrick v. S. Co. Servs.*, 910 F. Supp. 566, 569 (N.D. Ala. 1996) ("The fact that a contagious disease is an impairment does not automatically mean it is a disability.").

inquiry is shown to be job-related and consistent with business necessity." 42 U.S.C. § 12112. "Section 12112(d)(4)(A) prohibits employers from using medical exams as a pretext to harass employees or to fish for nonwork-related medical issues and the attendant 'unwanted exposure of the employee's disability and the stigma it may carry.'" *Brownfield v. City of Yakima*, 612 F.3d 1140, 1140 (9th Cir. 2010) (citing *EEOC v. Prevo's Fam. Mkt., Inc.*, 135 F.3d 1089, 1094 n. 8 (6th Cir. 1998)).

The provision does not prohibit all medical inquires, but only those "as to whether such employee is an individual with a disability or as to the nature or severity of the disability." *Conroy v. N.Y. State Dep't of Corr. Servs.*, 333 F.3d 88, 94 (2d Cir.2003) (quoting 42 U.S.C. § 12112). When interpreting this provision, the Fifth Circuit looks to the U.S. Equal Employment Opportunity Commission ("EEOC") Enforcement Guidance: Disability-related Inquiries and Medical Examinations of Employees Under the Americans with Disabilities Act (2000), 2000 WL 33407181 ("Enforcement Guidance"). *See Delaval*, 824 F.3d at 482; *Diggs v. Burlington N. & Santa Fe Ry. Co.*, 742 F. App'x 1, 4 (5th Cir. 2018).

Under the Enforcement Guidance, the first step is to determine whether an employer's question is a "disability-related inquiry" or whether the test or procedure is a "medical examination." 2000 WL 33407181, at *2.

A "disability-related inquiry" "is a question (or series of questions) that is likely to elicit information about a disability." *Id.* at *3. A "medical examination" is "a procedure or test that seeks information about an individual's physical or mental impairments or health." *Id.*

In this case, Chancey has not alleged that BASF undertook any action that meets the definitions of a disability-related inquiry or medical examination. All BASF actions, as alleged by the plaintiff, are consistent with recent EEOC guidance specifically related to the COVID-19 pandemic. *See What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO*, EEOC (Mar. 14, 2022).[4]

Simply put, Chancey's amended complaint fails to identify any action allegedly taken by BASF that constitutes a disability-related inquiry or medical examination. Indeed, everything BASF is alleged to have done is expressly authorized by the EEOC. Accordingly, Chancey's unlawful medical exams or inquiries cause of action must be dismissed.

### C. Retaliation

To allege a plausible claim of retaliation under the ADA, a plaintiff must contend that (1) he participated in an activity protected under the

---

[4] *Available at* https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws (last visited July 2, 2022).

statute; (2) his employer took an adverse employment action against him; and (3) a causal connection exists between the protected activity and the adverse action. *Feist v. La., Dep't of Justice, Office of the Att'y Gen.*, 730 F.3d 450, 454 (5th Cir. 2013). To prove the second element—an adverse employment action—a plaintiff must demonstrate that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination. *Dehart v. Baker Hughes Oilfield Operations, Inc.*, 214 F. App'x 437, 442 (5th Cir. 2007) (per curiam).

In his amended complaint, Chancey lists the following alleged "adverse actions:"

> [D]efendant created false employment records stating that plaintiff was "a safety hazard" without assessment via a written safety violation warning; defendant threatened to accuse plaintiff of "abandoning his job" while preventing him access to the job site; plaintiff was threatened with termination on several occasions and given deadlines for termination such as January 4, 2022 and February 1, 2022; plaintiff was refused access to job site, his office, the break room and rest rooms; plaintiff was repeatedly coerced by management to undertake accommodations for a perceived, yet undiagnosed disability; defendant continued to harass plaintiff despite plaintiff claiming protected opposition status by filing an EEOC Charge; defendant threatened plaintiff with incurring extra costs for weekly "antigen testing" at his own expense that other employees did not incur; and defendant's ADA compliance officer refused to mitigate the retaliation or aid and encourage the plaintiff in enjoying rights protected under the ADA.

Dkt. 6 at 14.

Chancey's allegations, if proven, are nothing more than petty slights or minor annoyances that do not rise to the level of an adverse employment action. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) ("We speak of *material* adversity because we believe it is important to separate significant from trivial harms."); *see also King v. Louisiana*, 294 F. App'x 77, 85 (5th Cir. 2008) (holding that "allegations of unpleasant work meetings, verbal reprimands, improper work requests and unfair treatment do not constitute adverse employment actions as . . . retaliation"); *Grice v. FMC Techs., Inc.*, 216 F. App'x 401, 407 (5th Cir. 2007) (holding that allegedly falsified reprimands are considered "trivial" and not materially adverse in the retaliation context); *DeHart*, 214 F. App'x at 442 (holding that a written disciplinary warning for insubordination and being argumentative would not have "dissuaded a reasonable worker from making or supporting a charge of discrimination").

Moreover, as is evident by the hundreds of pages of records attached to Chancey's pleadings, none of the above actions actually dissuaded him from submitting to BASF management repeated objections to BASF's COVID-19 policies or filing a charge of

discrimination. *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 68.
Simply put, Chancey's alleged adverse employment actions, if proven,
amount to nothing more than trivial slights that cannot support a
retaliation claim under the ADA. Therefore, his retaliation claim must
be dismissed.

\*     \*     \*

For the reasons stated above, BASF's motion to dismiss is granted. Dkt.
9. Chancey's claims are dismissed with prejudice.

Final judgment to issue separately.

Signed on Galveston Island this 29th day of December, 2022.

JEFFREY VINCENT BROWN
UNITED STATES DISTRICT JUDGE

BRIAN D CHANCEY
9792457000
3901 7TH ST
BAY CITY  TX 77414

5 LBS                    1 OF 1
          DWT: 12,9,4

SHIP TO:
  9792457000
  FIFTH CIRCUIT COURT OF APPEALS
  600 S MAESTRI PL STE 115
  NEW ORLEANS  LA  70130-3408

 LA 701 9-22

UPS GROUND

TRACKING #: 1Z 748 7X5 42 9468 7380

BILLING: P/P
SIGNATURE REQUIRED

rx Ref No.: PM PKG ID 229582
rx Ref No.: FROM Brian D Chancey
            XOL 23.02.02      NV49 7.0A 02/2023