# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

**Appeal No. 23-40032**

BRIAN CHANCEY,
*Plaintiff-Appellant,*

v.

BASF CORPORATION
*Defendant-Appellee.*

On Appeal from the United States District Court

For the Southern District of Texas, Galveston

Civil Action File: 3:22-cv-34

### APPELLANT'S REPLY BRIEF

Brian Chancey, in *Propria Persona*
3117 Encino Avenue
Bay City, Texas 77414



U.S. COURT OF APPEALS RECEIVED APR 19 2023 FIFTH CIRCUIT

# APPELLANT'S CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 16.1 and 5th Cir. R. 28.2.1, Appellant Brian Chancey certifies that the following persons and entities are known to Appellant to have an interest in the outcome of this case or appeal:

1. BASF Corporation (Appellee)
2. Jeffrey Vincent Brown (U.S. District Judge)
3. Brian Chancey, (*pro se* Appellant)
4. Carolyn Russell (Appellee's counsel)
5. Ryan Swink (Appellee's counsel)

# TABLE OF AUTHORITIES

**Cases**

1) *Cossette v. Minnesota Power & Light*,
    188 F.3d 964, 969-70 (8th Cir. 1999) ................................................................. 5

2) *Fredenburg v. Contra Costa County Dep't of Health Servs.*,
    172 F.3d 1176, 1182 (9th Cir. 1999) .................................................................. 5

3) *Fromm v. MVM, Inc.*,
    371 F. App'x 263, 269 (3d Cir. 2010) ................................................................. 4

4) *Griffin v. Steeltek, Inc.*, 160 F.3d 591,
    594 (10th Cir. 1998) ............................................................................................ 5

5) *Griggs v. Duke Power Co.*,
    401 U.S. 424 (1971) ............................................................................................ 3

6) *Jones v. Se. Pa. Transp. Auth.*,
    796 F.3d 323, 326 (3d Cir. 2015) ...................................................................... 12

7) *Skerski v. Time Warner Cable Co.*,
    257 F.3d 273 (3d Cir. 2001) ................................................................................ 4

8) *Tennessee v. Lane*,
    541 U.S. 509 (2004) ...........................................................................................15

9) *Thompson v. City of Waco*,
    764 F.3d 500, 503 (5th Cir. 2014) ..................................................................... 12

**Statutes**

ADA Amendments Act of 2008 ("ADA-AA") ........................................................ 5

**Rules and Regulations**

29 CFR § 1630.15 Defenses ..................................................................................... 5

29 CFR Appendix to Part 1630 -*Interpretive Guidance on Title I of the ADA* ........................ 4,13

**EEOC documents**

1) "What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws Technical Assistance Questions and Answers" - *Updated on July 12, 2022*.................... 5

2) "*Pandemic Preparedness in the Workplace and the Americans with Disabilities Act*"
EEOC Technical Guidance 2009 ............................................................................. 6

**APPELLANT'S REPLY TO APPELLEE'S RESPONSIVE APPEALS BRIEF**

Defendant/Appellee BASF, admits that its "Covid policy" is intended to prevent the spread of "Covid-19", which it claims to be a "deadly contagious disease". The policy begins with the premise that all employees are contagious threats, and the policy seeks to impose medical treatments, tests and inquiries upon all employees. The documented fact that the employer seeks to treat employees demonstrates that the employer, through the "Covid policy" perceives all employees as impaired—the proof is the policy and the demand for treatments itself. There is no need for the court to look further to find the basis for Chancey's claim that he is being perceived as impaired by his employer's policy. It is not a defense to the ADA for BASF to repeatedly deny that it regarded Chancey as disabled, it is also immaterial to his claim. Chancey gave BASF written notices that he was being regarded as disabled (by the "Covid policy", by BASF which adopted the "Covid policy", by the CDC and government agencies, by his co-workers, etc.) and he asked his employer to step in and correct this perception. The proof of the perception is the policy measures (treatments, dates of compliance, written communications about the policy, meetings, etc) which were all geared toward having Chancey comply with various treatments, tests and inquiries which create new conditions of employment that were all implemented in order to "stop the spread of COVID-19". These facts are in the record and have been admitted by the defendant.

The employer purports to "stop the spread of COVID-19" without any diagnosis of a medical condition; naturally without objective evidence of a contagious condition, one must conclude that the policy frankly perceives all employees as impaired safety threats in need of the specific treatments outlined in the policy: either the "Covid vaccine" treatment or the mask + "PCR test" treatment. The employer uses vaccine status tracking in order to monitor treatment. Any employee who refuses treatment is

still considered to be a direct threat[1]. The policy handles "treated" and "untreated" employees disparately based solely upon the perception that an "untreated" employee remains a safety threat.... to all the treated employees, apparently[2]. Chancey, is classified as an "untreated" employee and this is the only reason he has had the terms and conditions of his employment diminish and has experienced interference with claiming his rights.

BASF's policy was not "uniformly enforced"; but instead, was disproportionately applied to the group of "untreated" employees which BASF regarded as still impaired, and as still being a direct threat to safety. This sub-group was still regarded as disabled with having or potentially having a deadly contagious disease because they were classified as "untreated". BASF imposed a secondary treatment on these employees: mask + "PCR test", and then these employees were considered as "treated". However, a sub-sub-group of employees refused non-job-related treatments, Chancey is in this group, and BASF continued to discriminate against this group of employees by regarding them as still impaired.

In addition, these treatments are not in any way related to the employee's ability to perform any essential job functions; rather the treatments are imposed and monitored in order to manage the perceived threat. The policy tells all employees to report their "Covid-19 vaccine status". Those who present evidence of receiving this treatment are no longer perceived as impaired.

BASF's admitted intent is to "prevent the spread of" a disease. Chancey has alleged that BASF has no legal duty or legal authority to "prevent the spread of" disease, and BASF has failed to provide any evidence that it acquired a new legal duty to

---

1 The term "untreated" means the employee is considered a direct threat of spreading contagious disease as long as they remain "untreated".
2 It has never been a medical standard that one person must receive medical treatment in order for another person's medical treatment to be effective. This end-result of adopting such an illogical premise additionally destroys the right to medical privacy.

"prevent the spread" of a disease.[3] BASF does not have either the state power reserved to the legislature to conditionally require a specific vaccination nor does it have the agency mandate of the DOH, and it did not derive authority from OSHA. Even in the instance of a pandemic, and even in the instance of a potentially contagious disease, neither of these situations would confer BASF with any new legal authority or new legal duty to impose non-job-related medical treatments, tests and inquiries upon its employees. Given this lack of authority, the only way BASF can legally impose medical treatments, tests and inquiries on an employee is by proving that each and every requested treatment, test and inquiry-satisfies the following conditions: either: 1) it is "job-related" and necessary in order for Chancey to perform the essential functions of his job[4]; or 2) BASF has determined through an individualized assessment that Chancey presents a direct threat/ "safety threat" and BASF has determined that business necessity requires the mitigation of an objectively established direct threat.[5] Absolutely none of these pre-conditions have been satisfied by BASF. BASF has not claimed a legitimate affirmative defense to violating the ADA.

It is not a defense to violations of the ADA to claim that BASF was "following public health guidance" because: 1.) CDC guidance does not create a new legal duty for BASF to "stop the spread of COVID-19"; 2.) the DOH cannot extend any legal authority that exists within DOH mandate onto another entity like BASF 3.) the legal authority of the DOH mandate does not even allow the DOH to impose universal treatments, test, and inquiries. 4.) under the ADA, an employer is only allowed to impose treatments, tests and inquiries on a current employee which are related to helping that employee perform the essential functions of his job, since Chancey is able to perform his job

---

[3] See Section "II. B. The Covid policy is illegal and lacks enforcement authority" for argument and citations Appellant's Brief pages 25-28.
[4] And the employer revealed this before he signed his contract.
[5] See Section II. A. In Appellant's Brief Pages 23-25 discussing "non-job-related" and "disability-related" medical treatments, test and inquiries.

without the policy measures, the policy measures are not "job-related" and thus are outside BASF's purview to impose.

Chancey showed in his opening brief that Judge Brown was perfectly aware of the concept of employment regulations needing to be tied to the parameters of the workplace when he issued the ruling in *Georgia v Biden*. The same concepts apply under the ADA under the prohibition against non-job-related tests, treatments and inquiries. In general, Chancey's current and pre-policy performance of his job proves performance of his essential job functions.[6]

Furthermore, the policy, by its very existence and stated purpose is certainly a disability-related inquiry. The "vaccine status" inquiry is intended to determine who has received "Covid-19 vaccine" treatment for the perceived impairment and who has not; and an untreated employee is perceived as still impaired. It should also be noted that there are effectively two categories: "non-job-related" and "disability-related" treatments, test and inquiries. Significantly, Chancey has claimed that BASF is violating both categories, however BASF and Judge Brown have only focused on "disability-related" and have ignored the "non-job-related" category all together. "Even if there is no discriminatory intent, an employer may not use a job requirement that... has no relation to measuring performance of job duties. Testing or measuring procedures cannot be determinative in employment decisions unless they have some connection to the job." *Griggs v. Duke Power Co.*, 401 U.S. 424 (1971). BASF cannot impose a new condition of employment on Chancey that is unrelated to the performance of his job duties.

In addition, Congress emphasized in its Interpretive Guidance to the 2008 ADA Amendments Act that an employee actually does not need to be disabled to qualify for the protection of the ADA-AA:

---

6 . "...evidence of successful job performance may suffice to create a dispute of material fact over what constitutes an "essential function." From *Fromm v. MVM, Inc.*, 371 F. App'x 263, 269 (3d Cir. 2010) and citing *Skerski v. Time Warner Cable Co.*, 257 F.3d 273 (3d Cir. 2001)."

> "It is settled law that *any employee* may bring a claim of improper disability-related inquiries or medical examinations, improper disclosure of confidential medical information, or retaliation not just individuals with disabilities. See, e.g., *Cossette v. Minnesota Power & Light*, 188 F.3d 964, 969-70 (8th Cir. 1999); *Fredenburg v. Contra Costa County Dep't of Health Servs.*, 172 F.3d 1176, 1182 (9th Cir. 1999); *Griffin v. Steeltek, Inc.*, 160 F.3d 591, 594 (10th Cir. 1998)." [7]

BASF appears to be attempting a new defense to the ADA in it's Response Brief, claiming that Chancey can only be regarded as disabled individually and that a policy that is applied to everyone cannot regard him individually. As shown above, the policy focuses discrimination and adverse actions on the "untreated" employees, such that the policy is not truly applied universally. However, not only does the definition of disparate impact apply to both individuals and a class of individuals, the disparate impact defense clearly establishes that the disparate treatment must be job-related and consistent with business necessity in order to qualify as a proper defense to the ADA.

29 CFR§ 1630.15 Defenses.

(c) It may be a defense to a charge of discrimination brought under this part that a uniformly applied standard, criterion, or policy has a disparate impact on an individual with a disability or a class of individuals with disabilities that the challenged standard, criterion or policy *has been shown to be job-related and consistent with business necessity,* and such performance cannot be accomplished with reasonable accommodation, as required in this part. (*emphasis added*)

BASF remains unable to show that the new qualification standard ("untreated" employees are perceived as direct threats) is objectively true because it never performed an individualized assessment, nor can it show that the treatment, test or inquiry is job-related and consistent with business necessity.[8] Direct threat is an evidentiary standard,

---

[7] See page 1, "Introduction" to 29 CFR Appendix to Part 1630 -*Interpretive Guidance on Title I of the Americans With Disabilities Act*

[8] Aside from the treatments described in the policy, the policy fails to include any mechanism by which the results of following the policy can be measured, tested or documented to determine whether or not BASF's policy would allow it to establish proximate cause for any employee becoming infected, and whether or not BASF's policy was successful at preventing such a disease.

it is not a hypothetical standard, an objective assessment is required. The defendant has not met the burden to claim "business necessity" as discussed in EEOC employer guidance which clearly shows that the business necessity standard requires proof of a medical condition that meets the "direct threat" standard and it must also be "job-related":

> "...once an employee begins work, any disability-related inquiries or medical exams must be "job-related and consistent with business necessity." One way inquiries and medical examinations meet this "business necessity" standard is if they are necessary to determine whether a specific employee has a medical condition that would pose a "direct threat" to health or safety..." *("Disability-related Inquiries and Medical Exams"*, Introduction)[9]

Judge Brown and BASF both mischaracterize Chancey's claim in order to dismiss it. Judge Brown stated that Chancey claimed BASF believed he "had a case of transitory Covid"; and Judge Brown stated that BASF's perception of Chancey's impairment might be transitory too (and did not discuss minor). Now, in the Response Brief, BASF is claiming that Chancey claimed that BASF regards him as having a case of "future Covid" and argues that Chancey can't claim he qualifies for the protection of the ADA based on his employer regarding him as possibly developing an impairment in the future. These are all distortions of Chancey's claim designed to escape liability.

Chancey's complaint and affidavit give a date on which his employer instantly considered him too impaired to work without receiving treatment, it was July 30, 2021. On that date he was informed by his employer via the "BASF Freeport Update #62 Coronavirus19" email sent to everyone in the company, that he was expected to wear a mask at work, to give his current temperature to the guard at the entry gate for the guard to interpret, to stay 6-feet away from other workers and if he did not comply with these (non-job-related) medical treatments, tests and inquiries he would be written up for a

---

9   "What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws *Technical Assistance Questions and Answers" - Updated on July 12, 2022.* https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws

safety violation which could lead to termination. Chancey has alleged numerous examples of his employer communicating concrete and date-specific perceptions that Chancey needs treatment. It is clearly irrelevant to BASF's "Covid policy" whether Chancey "actually" has any symptoms or a doctor's diagnosis, it will continue to regard him as impaired as long as he remains "untreated" for the perceived disability. The policy is not rational, it is based upon the implausible and irrational belief that every employee suddenly became impaired and in need of treatment.

Judge Brown and BASF both mischaracterize Chancey's claim by trying to argue that Chancey has made his claim under the "actual" prong of disability. Then Brown and BASF make irrrelevant arguments about duration or severity some fictitious case of "future COVID" and "transitory COVID". Chancey's case is proceeding under the "regarded as" and "record of" prongs, not the "actual" prong. The "regarded as" prong does not look at the severity or duration of any actual impairment, it looks at the adverse actions which demonstrate the perception[10] of an impairment. Thus, the Judge has failed to correctly look at the facts which show that Chancey has been perceived as impaired since July 30, 2021 and has had the conditions and terms of his employment adversely affected because he is perceived as impaired.

Chancey is not precluded from invoking his rights under the ADA simply because BASF denies Chancey is being perceived as disabled, particularly because he gave BASF written notice of the same. Chancey may also be regarded as having a disability by other parties and entities besides his employer and the Covid policy, such as the government, co-workers, friends and family, and he is not required to identify who specifically regards him as having a disability, nor is he required to discuss the nature of the disability he is regarded as having, especially when it is not related to his essential job function and when he is not requesting any accommodations. He is required to

---

10 The perception is also demonstrated by the treatments, test and inquiries themselves.

allege the pleading requirements sufficiently.[11] He has done so and Judge Brown ignored Chancey's properly alleged plea and ignored the rules of construction.

BASF argued that the tests, treatments and inquiries were not disability-related but does not give any evidence to support the statement and quoted EEOC employer guidance which has been revised to what is quoted above, however BASF was aware of the 2009 source document called *Pandemic Preparedness in the Workplace and the Americans with Disabilities Act* EEOC Technical Guidance, because Stephen Cafiero referred to this document in his September 8, 2021 email to Chancey as the basis for BASF refusing to rely on an individualized assessment before proceeding to consider Chancey a direct threat. However, Cafiero mischaracterized the guidance, which simply stated that an employee who has actually been diagnosed with COVID-19 may be considered a direct threat, it did not say undiagnosed employees may also be considered direct threats. [Dkt 6] p. 68  BASF admits that the purpose of the policy is to "stop the spread of COVID-19", all measures were therefore designed to "inquire", "test" or "treat" this specific communicable disease and no other. Any employee who failed to pass the screening survey test or the temperature check was not allowed to enter the workplace and was put on an unpaid quarantine. While having a temperature of 100.1 does not qualify as an actual diagnosis of "COVID-19", nevertheless, such an employee would be refused admittance to the workplace. This demonstrates that this medical examination was disability-related, meaning it was designed to reveal a *perceived* disability as shown by the adverse action taken. The ADA definition of a medical exam is: " A "medical examination" is a procedure or test that seeks information about an individual's physical or mental impairments or health."[12] Asking survey questions about

---

11 1) employer was subject to the ADA; (FAC Ct I¶ 4); 2) he was an individual with a disability within the meaning of the ADA (FAC-I ¶¶ 7-12, 21, 22, 24, 29); 3) qualified to perform the essential functions of his job (FAC, Ct I ¶¶ 8, 11, 38); 4) subjected to adverse employment actions because of disability (FAC, Ct I ¶¶ 25-33, 36, CT II ¶¶ 6, 8, 11-13, 18, 19, 23, 25-37, 41, 42)

12 *Pandemic Preparedness in the Workplace and the Americans with Disabilities Act*, EEOC Technical Guidance. Section A.1 Definitions. https://www.eeoc.gov/laws/guidance/pandemic-preparedness-workplace-and-americans-disabilities-act

"Covid symptoms" and "Covid contact" is designed to elicit answers about Covid. Just like questions about AIDS symptoms and AIDS contacts are designed to elicit answers about AIDS. These are considered disability-related questions, and in this case they related to a perceived disability because the employer does not possess objective evidence that the employee has the disease prior to asking such specific questions.[13]

BASF limits both "untreated" employees, and employees suspected of having COVID-19, access to work, this supports Chancey's allegation that BASF perceives these employees as too impaired to work unless they are "treated" per the policy. Any employee who was not treated by the "Covid vaccine" would not be allowed to attend off-site company social events and was generally not allowed to travel on business trips. The company imposed a mask-wearing treatment for all employees indoors on the asumption that all employees were impaired with a communicable disease on July 30, 2021 as a condition for access to the work-place. [Dkt 6] p. 32-3.

BASF stated that refusing the mask-wearing treatment would result in progressive discipline which demonstrates that untreated employees were perceived as impaired and in need of discipline to make them take treatment. [Dkt 6] p. 35  In fact, Chancey received a written warning on August 12, 2021 for this very reason. [Dkt 6] p. 37. Chancey asked the company to provide him with the medical assessment determining he needed treatment, the risk/benefit analysis he was entitled to for informed consent, asked the company what legal duty and insurance coverage it had for implementing masks or controlling a pathogen widely known in the community, he asked why the BASF policy couldn't just allow masks  for the workers who wanted to wear them,  and he let the

---

13 "During employment: The ADA prohibits employee disability-related inquiries or medical examinations unless they are job-related and consistent with business necessity. Generally, a disability-related inquiry or medical examination of an employee is job-related and consistent with business necessity when an employer has a reasonable belief, based on objective evidence, that: 1. An employee's ability to perform essential job functions will be impaired by a medical condition; or 2. An employee will pose a direct threat due to a medical condition. This reasonable belief "must be based on objective evidence obtained, or reasonably available to the employer, prior to making a disability-related inquiry or requiring a medical examination." *Pandemic Preparedness in the Workplace and the Americans with Disabilities Act*, EEOC Technical Guidance. (*ibid*)

company know that he would work remotely, outdoors and 6-feet away from others while he awaited the answers to these questions. [Dkt 6] p. 39. On August 13, 2021, Chancey again asked for the risk/benefit analysis necessary to give informed consent to the mask treatment for SARS COV-2 and he did not receive a reply. [Dkt 6] p. 43. Chancey has filed affidavit testimony stating that no health officer has identified him as having a communicable disease, nor has any physician filed an affidavit stating that he has a communicable disease, nor has any court issued any order declaring him a direct threat. [Dkt 6] p.21-2. In October, 2021, Chancey asked his employer to "cease and desist" from communications asking him to register his "Covid vaccine status" on the "Vax-Up" online portal BASF used to track which employees were "treated" by "Covid vaccines" and which were not. Chancey asked for the communications to cease because they asked for "private medical information and [have] no relevance to [his] ability to perform [his] job." [Dkt 6] p.79. The communications Chancey referred to are properly seen as disability-related, since employees "untreated" by "covid vaccines" were told to wear masks and were not allowed to attend company social events and their business travel was curtailed because they had not received this treatment (for a perceived impairment). BASF claimed the OSHA ETS provided the necessary legal authorization for requiring proof of "Covid vaccination" or imposing weekly "Covid testing" of employees. [Dkt 6] p. 81; which Chancey's alleges are new qualification standards based upon non-job-related and disability-related treatments, tests, and inquiries. Chancey sent Stephen Cafiero a statement from 24 attorney generals around the US stating that the "COVID-19 virus" does not qualify as an OSHA recognized "workplace hazard".[14] [Dkt 6] p. 98-9.

On November 22, 2021, BASF stated that "vaccinated" employees would no longer need to wear masks as of December 5, 2021 and on January 4, 2022, BASF

---

14  The OSHA 1970 guidance also requires an objective assessment prior to declaring a workplace hazard, and therefore employers could not justify mitigation measures under OSHA 1970 guidance; the court later stayed the OSHA ETS as unenforceable, but BASF continued to enforce the measures despite the lack of authority.

would impose weekly "Covid testing" (a non-job-related and disability-related medical examination) on all "unvaccinated" employees which also demonstrates that BASF is classifying employees by medical treatments which is making a record of perceived disability. [Dkt 6] p. 100. Next, BASF tells "vaccinated" employees to wear an identifying sticker, while telling "unvaccinated" employees to pay for their own weekly tests after 60 days and that failing to test will lead to termination. [Dkt 6] p.104. Once extensive weekly testing was implemented[15], BASF conflated postive "tests" as positive "cases" and "decided to return to code red" measures from January 3-14, 2022. [Dkt 6] p. 110. This supports that the "tests" are disability-related even when they do not qualify as a proper diagnosis, as more restrictive conditions of employment were implemented based upon "testing" and 5-day isolation and 10-day quarantine measures went into effect as well as increased masking, and virtual meetings. The definition of being "fully vaccinated" was changed to include needing a "booster" shot as well. [Dkt 6] p. 110-12. BASF policy states that it will label both a "positive test" result and an actual "diagnosis of COVID-19 by a licensed healthcare practitioner" equally as a "case of COVID-19" and will remove the employee from the workplace for quarantine. [Dkt 6] p. 129. A new "code red" standard developed after weekly testing was implemented which resulted in masks being required for all employees while in the workplace---which is directly based on BASF's increased use of disability-related medical exams. [Dkt 6] p. 133.

Adverse employment actions under the ADA include materially adverse changes in the terms and conditions of employment as well as interference with the employee claiming his rights protected by the ADA. "An adverse employment action is a materially adverse change in the terms and conditions of employment."; *Jones v. Se. Pa. Transp. Auth.*, 796 F.3d 323, 326 (3d Cir. 2015). "[A]n adverse employment action [is]

---

15 "Covid tests" are considered screening tests rather than diagnostic tests which provide a diagnosis, this is listed on the boxes and on the package inserts. Thus all actions taken are based on perceived impairment not a confirmed diagnosis.

11

an action by an employer that is serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment."; *Thompson v. City of Waco*, 764 F.3d 500, 503 (5th Cir. 2014).

BASF imposed new qualification standards on Chancey for continued employment that are disability-related, are not job-related, and which he never agreed to. BASF diminished Chancey's job security and has threatened him with discipline, false "job abandonment" records, and dismissal several times based on deadlines due to perceived disability and his on-going opposition to an illegal policy as discussed in the record. BASF has diminished Chancey's medical privacy as the terms now include revealing private medical information ("Covid vaccine" status), disability-related medical exams (temperature) and "self-diagnosis" of test results ("Covid testing"), wearing face masks, quarantine based upon self-diagnosis, *inter alia*. BASF has changed the terms of discipline in his job to include punishment based upon new qualification standards based upon prohibited disability-related, and non job-related treatments, tests, and inquiries. BASF has diminshed work-related travel to employees who meet the new qualification standard. BASF has changed the terms of employee access to the work-site. BASF has imposed new weekly employee expenses for testing on all "uvaccinated" employees. BASF has interferred with Chancey's rights by imposing non-job-related and disability-related treatments, tests and inquiries as a new condition of employment. BASF has refused to recognize Chancey's rights to refuse experimental medical tretaments that are issued under Emergency Use Authorization guidelines which include the right to refuse and the right to informed consent. BASF has interferred with Chancey's property rights.

BASF admits many times throughout the record, that the penalties or adverse employment actions imposed upon plaintiff were causally related to Chancey's good faith refusal to participate in the policy, a right squarely rooted in 29 CFR Part

12

1630.9(d). BASF even admits being advised of this provision while admitting that it refused to provide Chancey with informed consent or conduct any individualized assessment to determine if he was a direct threat. BASF's "Covid policy" itself establishes the timeline and causal relationship between the medical treatments sought to be imposed upon Chancey, and the consequences for refusing to submit to them. This includes communications establishing deadlines for compliance with requests for medical records, tests, treatments and inquiries, dates Chancey was removed from the workplace, various disciplinary letters and write-ups, and multiple requests Chancey received for non-job-related and disability-related medical tests, treatments and inquiries which are all sufficiently alleged in the amended complaint, affidavit and exhibits.

It is not a legal defense, when Chancey alleges that the policy in question has inherent ADA violations, for BASF to claim that it has right to fire Chancey because he refused to comply with the policy. However, this is the defense that BASF attempted, and instead of analyzing whether or not the BASF expressed any cognizable defenses under the ADA, the trial court allowed BASF to make false conclusions based upon its own revision of the pleading. BASF has not made any legitimate or appropriate defense under the ADA. Not once did BASF attempt to cure its policy by bringing it into conformity with the law, not once did BASF express any defense such that it conducted any individualized assessment and thereby determined that the plaintiff was a direct threat, nor did it show it would suffer any undue financial burden for the plaintiff's good faith objection and refusal to participate in BASF's irrational and discriminatory "Covid policy".[16] Not once did BASF allege any set of facts that would have established that

---

16 "**During employment:**The ADA prohibits employee disability-related inquiries or medical examinations unless they are job-related and consistent with business necessity.' Generally, a disability-related inquiry or medical examination of an employee is job-related and consistent with business necessity when an employer has a reasonable belief, based on objective evidence, that: 1. An employee's ability to perform essential job functions will be impaired by a medical condition; or 2. An employee will pose a direct threat due to a medical condition. This reasonable belief "must be based on objective evidence obtained, or reasonably available to the employer, prior to making a disability-related inquiry or requiring a medical examination." Pandemic Preparedness in the Workplace and the Americans with Disabilities Act, EEOC Technical Guidance.

the "Covid policy" was implemented in order to fulfill any business necessity, or that plaintiff's refusal to participate would fundamentally alter BASF's normal operations.

The use of the term "plausible" to argue that Chancey did not state a "plausible" claim in his amended complaint[17] is employed for the purpose of increasing the jurisdictional threshold beyond that which Congress intended with its 2008 amendment to the Americans with Disabilities Act. Judge Brown erred by ignoring a Congressional mandate to determine the employer's compliance rather than on disqualifying employees from coverage.

Congress stated in 2008 that the main focus of the courts should be whether the employer is satisfying its obligations under the ADA. "...[I]t is the intent of Congress that the primary object of attention in cases brought under the ADA should be whether entities covered under the ADA have complied with their obligations, and to convey that the question of whether an individual's impairment is a disability under the ADA should not demand extensive analysis.".

BASF failed to present a proper defense, and Judge Brown refused to note that BASF failed to plead a proper defense. Instead, Judge Brown mischaracterizes the readily apparent fact that the policy is premised on regarding all employees as impaired and in need of medical treatment in order to work as "implausible" which effectively applies a new standard of pleading requirements that exceeds the Congressional intent as previously explained. The standards in *Bell v. Twombly* and *Ashcroft v. Iqbal* cannot be applied without consideration of Congressional intent for the ADA, especially since Congress had to amend the law in 2008 because courts made decisions that countermanded the original intent of Congress and the law. It appears we are here once again, where the federal court is attempting to create a higher threshold by its use of the legal fiction known as "implausible". The use of this term is intended to create a higher

---

17 That the policy initially considers all employees as direct threats, then this is modified to classifying all "untreated" employees as direct threats and thus disabled.

threshold for those seeking relief and protection under the ADA than was intended by Congress. Not only is the court participating in the same illegal policies as BASF, it is also denying Chancey access to the court and the law and justice. This is the same despicable conduct demonstrated by the court in *Tennessee v. Lane*, 541 U.S. 509 (2004).

**CONCLUSION:** For the reasons herein the judge's decision constitutes an abuse of discretion, failed to apply the law correctly, is clearly erroneous and should be reversed in the interests of justice.

WHEREFORE the appellant requests an order reversing the trial court's decision and remanding it to trial court for further proceedings.

DATED this 18 day of April, 2023.

*Brian Chancey*

Brian Chancey, Appellant

## CERTIFICATE OF COMPLIANCE

I, Brian Chancey, do certify the following:

1. This document complies with FRAP 32(a)(7)(B) because, excluding parts of the document exempted by FRAP 32(f) this document contains 4425 words.

2. This document complies with FRAP 32 (a)(5) and (6) because this document has been prepared using Times New Roman font in 14-point.

By: ꞵx

## CERTIFICATE OF SERVICE

I, Brian Chancey, hereby certify that a true and correct copy of the foregoing was duly served upon the defendant's attorneys Carolyn Russell and Ryan Swink both at the address of One Allen Center, 500 Dallas Street, Suite 3000; Houston, Texas 77002 via first class mail on this 18 day of April 2023.

I further certify that four true and correct copies of the foregoing were duly served upon the Fifth Circuit Court of Appeals at the address of 600 S. Maestri Place, Suite 115; New Orleans, LA 70130-3408 via first class mail on this 18 day of April, 2023.

By: ꞵx